IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SAMUEL HARRIS,

      Plaintiff,

v.                                                                                    Civil Action No. **3:23CV149**

SGT. GIOVONNIE FAULCON, *et al.,*

      Defendants.

**MEMORANDUM OPINION**

Samuel Harris, a Virginia inmate proceeding *pro se*, filed this civil rights action.[1]  In his

Complaint, Harris contends that Defendant Faulcon used excessive force against his person in

violation of his rights under the Eighth Amendment when he aggressively shoved Harris.[2]

Defendant Faulcon has moved for summary judgment.  Harris has responded.  For the reasons set

forth below, the Motion for Summary Judgment, (ECF No. 19), will be GRANTED.

**I.  STANDARD FOR SUMMARY JUDGMENT**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  The party seeking summary judgment bears the responsibility of informing the Court of

the basis for the motion and identifying the parts of the record which demonstrate the absence of

a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.  The Court corrects the spelling and capitalization in the quotations from the parties' submissions.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Defendant Faulcon submitted surveillance video footage of the events in question; his own affidavit, (ECF No. 21-1); and the affidavit of Lieutenant J. Patterson, the Institutional Investigator, who reviewed the video footage,

(ECF No. 21-2). Harris has responded by submitting his own affidavit, affidavits from several other inmates, and some institutional records.

Harris also attempts to transform his Memoranda into evidence by swearing to the contents of the Memoranda. (*See, e.g.*, ECF No. 24, at 10; ECF No. 28, at 7.) This he cannot do. The Court previously informed Harris that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 6, at 1–2.)

Additionally, Harris insists that Defendant Faulcon, somehow, edited the video evidence. (ECF No. 25, at 2.) The best way to resolve this dispute is to examine the evidence. That examination reveals that Harris's challenge to the video evidence is frivolous. Further, even if one accepts Harris's discredited version of events, he cannot establish an Eighth Amendment violation.

## II. SUMMARY OF RELEVANT FACTS

### A.    Introductory Facts

The relevant events occurred at Deerfield Correctional Center. (ECF No. 21-1, at 1-2.) On June 9, 2022, at around 4:00 a.m., inmates were travelling from their housing unit to the dining hall for breakfast. (ECF No. 21-1 ¶ 4.) Defendant Faulcon was the only officer on post outside of the dining hall. (ECF No. 21-1 ¶ 4.)

"Harris was a wheelchair pusher for another inmate. Inmate wheelchair pushers are supposed to remain with the inmate they are assisting at all times." (ECF No. 21-1 ¶ 5.) When Defendant Faulcon encountered Harris, however, Harris was not with inmate Sutton, the inmate

3

Harris was supposed to be assisting. (ECF No. 21-1 ¶ 5; ECF No. 24-2 ¶ 6.)  Instead, Harris "was standing inside the exit door waiting for Mr. Sutton . . . ." (ECF No. 24-2 ¶ 6.)

Defendant Faulcon "summoned" Harris over. (ECF No. 24-2 ¶ 6.)  Harris approached Defendant Faulcon in a calm manner. (ECF No. 24-2 ¶ 7.)  Defendant Faulcon "instructed Harris to either return to the dining hall or go back to the C building." (ECF No. 21-1 ¶ 6.)  According to Harris, Defendant Faulcon told him "to get a diabetic tray or go back to the building with aggression in his voice." (ECF No. 24-2 ¶ 7.)  Defendant Faulcon "told Harris that he could not be wandering around." (ECF No. 21-1 ¶ 6.)[3]  Harris then became belligerent and irate. (ECF No. 21-1 ¶ 6.)  At that point, Defendant Faulcon "determined it was best for Harris to return to C Building. [Defendant Faulcon] therefore directed Harris to go back to the C building . . . ." (ECF No. 21-1 ¶ 6.)  In response, Harris directed Defendant Faulcon "to show [him] the policy where . . . Plaintiff should leave a disable[d m]an stranded in the chow hall." (ECF No. 24-2 ¶ 9.)

At this point, the parties' accounts diverge.

B.    **Harris's Account**

According to Harris, Defendant "Faulcon's hand reached towards his chest and he shoved [Harris]." (ECF No. 24-2 ¶ 10.)  Harris "stumbled and regained control, and [Defendant Faulcon] shoved [Harris] once again." (ECF No. 24-2 ¶ 10.)  Defendant "Faulcon reached for his radio and called for assistance, and when [Harris] saw the other officers running, [he] began walking towards [his] building." (ECF No. 24-2 ¶ 11.)  Defendant Faulcon then walked Harris back to his building. (ECF No. 24-2 ¶ 12.)

_____

[3] Defendant Falcon explains that "it is a security issue for an inmate to walk around aimlessly, [and] the security concerns were increased in this instance because [he] was the only officer in the area." (ECF No. 21-1 ¶ 5.)

Harris swears that, five days later, on June 14, 2022, he had to seek "medical attention for pain in [his] neck caused by the incident with Sgt. Faulcon." (ECF No. 22-3 ¶ 2.)

Harris has submitted the affidavit of fellow inmate Joseph Maher, who swears that on June 9, 2022, he saw Defendant Faulcon "aggressively shoving inmate Samuel Harris with such force that [Maher] thought he would fall." (ECF No. 22-1 ¶ 2.) Maher further states that "Sgt. Faulcon and inmate Samuel Harris stood there in front of the kitchen yard for more than three minutes before inmate Samuel Harris and Sgt. Faulcon departed towards Charlie Building." (ECF No. 22-1 ¶ 3.)

Additionally, inmate Vernon Silver swears that he saw Defendant Faulcon "shove" Harris so hard he did not think it was right. (ECF No. 22-2 ¶ 2.) Silver further swears that Harris and Defendant Faulcon lingered on the kitchen yard for at least three minutes before leaving together. (ECF No. 22-2 ¶ 3.)

### C.    Defendant Faulcon's Version and the Video Evidence

According to Defendant Faulcon, after he directed Harris to return to C Building, he escorted him there. (ECF No. 21-1 ¶ 6.) Defendant Faulcon notes that, "[o]ther than Harris's apparent agitation, [he does] not recall anything unusual about [his] encounter" with Harris or his escorting of Harris to his housing unit. (ECF No. 21-1 ¶ 7.) Defendant concedes that he "may have placed [his] hand on Harris' back or shoulder to guide him in the direction of C Building." (ECF No. 21-1 ¶ 7.) Nevertheless, Defendant Faulcon insists that:

> At no point during this exchange with Harris did [he] shove him in the back or otherwise use force. At the time of the incident, [Defendant Faulcon] had a dialysis port in [his] chest, and any strenuous movement, such as pushing or shoving another person, could have damaged or dislodged the port.

(ECF No. 21-1 ¶ 8.)

5

Lieutenant Patterson notes that time stamps in the three video feeds are not synchronized. (ECF No. 21-2 ¶ 4 n.4.)   Lieutenant Patterson provides the following narrative of the video evidence:

> Enclosure A-1 begins at 4:25:01 [in the morning] and shows Sgt. Faulcon at his post outside of the dining hall, with multiple inmates walking by towards the dining hall.  At 4:26:29, Sgt. Faulcon appears to speak to someone out of camera view.  At 4:26:36 inmate Harris walks into camera view towards Sgt. Faulcon.  The two exchange words and at 4:27:10 Harris appears to become more agitated.  At 4:27:14 Sgt. Faulcon picks up the radio to call for assistance.  At 4:27:24, Sgt. Faulcon places his hand on inmate Harris' shoulder.  At 4:27:25, Sgt. Faulcon points in the direction of the C Building, while inmate Harris continues to step into Sgt. Faulcon's face.  At 4:27:31, Sgt. Faulcon appears to place his hand on inmate Harris' back while the two walk in the direction of C Building.  At 4:27:36, inmate Harris stops and turns towards Sgt. Faulcon.  Sgt. Faulcon continues to try to escort inmate Harris to the C Building and the two walk out of camera view at 4:27:49.
>
> Enclosure A-2 shows the events visible in enclosure A-1 at a different angle.  At 4:29:22, Harris appears to turn around and face Sgt. Faulcon.  Sgt. Faulcon then appears to place his hand on Harris's back and the two walk in the direction of C Building.  Sgt. Faulcon and Harris walk out of [the] frame of the video at 4:29:56.
>
> In Enclosure A-3, Sgt. Faulcon and inmate Harris appear in camera view at 4:25:49. Inmate Harris walks in front of Sgt. Faulcon to the C Building door.  At 4:26:01, inmate Harris opens the C Building door.  He holds it open until Sgt. Faulcon directs him to walk inside.  Inmate Harris walks through the C Building door at 4:26:05. Sgt. Faulcon closes and secures the door and walks away at 4:26:10.  Sgt. Faulcon stops and talks to two other officers at 4:26:27.  The video ends at 4:26:59.

(ECF No. 21-2 ¶¶ 5–7 (paragraph numbers omitted).)

**D.   Harris's Dispute of the Video Evidence Is Frivolous**

"[W]hen a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.'"  *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (second alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (second alteration in original).   The United States Court of Appeals for the Fourth Circuit has cautioned that

6

> a court considering a defendant's summary judgment motion may discount a plaintiff's first-hand account "*only* [1] when there is evidence . . . of undisputed authenticity that [2] shows some material element of the plaintiff's account to be *blatantly and demonstrably false*" [3] such "that no reasonable jury could" credit the plaintiff's version of events.

*Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024) (alterations in original) (first quoting *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019); and then quoting *Scott*, 550 U.S. at 380).

Here, Harris asserts that,

> Faulcon's and Patterson's timeline of the event does not start until after the videos edited time. See A-1 video time at 2:27:25 and 2:27:25 which is clearly suspicious, being that the attack and assault happened at 2:04 to 2:11. Therefore, this is considered misleading and underhanded dealings.

(ECF No. 25, at 2.) Initially, none of the video evidence bears time stamps beginning at 2 o'clock. In his most recent filing, Harris attempts to correct for this discrepancy by suggesting the alleged assault occurred closer to 4:00 in the morning rather than 4:30 in the morning. Specifically, Harris states:

> Plaintiff disagree, because Faulcon's and Patterson's timeline for the assault incident, was mentioned after defendant decided to edit the video. See video time stamp at 4:27:25 and 4:27:49, 4:29:56, 4:26:05, 4:25:49. See Exhibit F, 1 (The actual assault happened at 4:02 to 4:11).

(ECF No. 28, at 6.) In his Complaint, however, Harris swore that alleged assault happened "at approximately 4:30 a.m." (ECF No. 1, at 3.)

Harris's conclusory suggestion that the video was somehow edited to delete Defendant Faulcon's alleged multiple, strong shoves is insufficient to defeat summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment"). Harris acknowledges he had only one, continuous interaction with Defendant Faulcon. That interaction is depicted on the video. It is impossible to reconcile Harris's

7

version of the events with what is depicted on the video evidence. Indeed, Harris has made little to no effort to do so. The Court accepts as established the version of facts set forth by Defendant Faulcon and depicted on the video evidence. Harris's Motion for a *Franks*[4] Hearing, (ECF No. 25), will be DENIED.

## III. ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component. *See id.* With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Regarding the subjective component, the inmate must demonstrate "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a

---

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." *Iko*, 535 F.3d at 239 (internal quotation marks omitted). These include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Id.* (quoting *Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 559 U.S. at 37. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." *Id.* (citation omitted) (internal quotation marks omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (citing *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985)).

Harris's and his witnesses' account of the alleged assault is flatly refuted by the video evidence which depicts his interaction with Defendant Faulcon outside the dining hall. *See Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019)). That video reflects that Defendant Faulcon merely placed his hand on Harris's shoulder to guide him in the direction of C Building. Given this record, Harris cannot even establish the objective component for his

excessive force claim because any use of force was trivial. *Wilkins*, 559 U.S. at 39.  Accordingly, his Eighth Amendment claim fails.

Furthermore, even accepting Harris's discredited version of events, Harris's excessive force claim fails.  It was 4:30 in morning.  Defendant Faulcon was the only correctional officer on duty outside the dining hall.  Harris was a wheelchair pusher, and he was supposed to remain with inmate he was assigned to push.  Nevertheless, Harris had left his assigned inmate and was lingering around the entrance to the dining hall.  Defendant Faulcon instructed Harris to either return to the dining hall or to C Building.  Harris became belligerent.  Defendant Faulcon, therefore, ordered Harris to return to C Building.  Harris did not comply.  Instead, Harris challenged Defendant Faulcon and directed Defendant Faulcon "to show [him] the policy where . . . Plaintiff should leave a disable[d m]an stranded in the chow hall."  (ECF No. 24-2 ¶ 9.)

At this point, it would be reasonable for Defendant Faulcon to perceive that some limited force was necessary.  The first *Whitley* factor, therefore, favors Defendant Faulcon.  *Whitley*, 475 U.S. at 322.  According to Harris, Defendant Faulcon shoved him forcefully twice.  While perhaps, according to Harris, this force was unnecessarily aggressive, from the perspective of Defendant Faulcon, alone in front of the dining hall, something needed to be done to cut short Harris's obstreperous behavior.  A shove is certainly less aggressive and provocative than a punch.  *See Hudson*, 503 U.S. at 9 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights" (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))).  Thus, the remaining *Whitley* factors also favor the conclusion that Defendant Faulcon did not use excessive force.  Although roughly a week later, Harris requested medical care for neck pain that he attributed to Defendant Faulcon's action, there is no evidence of bruising or other objective evidence that Harris sustained any injury from his

interaction with Defendant Faulcon.  Given this record, no reasonable juror could conclude that Defendant Faulcon applied force to Harris "maliciously and sadistically to cause harm" rather than in a good faith effort to maintain order.  *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).  Harris's Eighth Amendment claim against Defendant Faulcon will be DISMISSED.

## IV.  THE ACTION IS FRIVOLOUS AND MALICIOUS

The courts are charged with dismissing an action proceeding in forma pauperis at any time during the course of the litigation that it becomes clear that the action is frivolous or malicious.  28 U.S.C. §§ 1915A, 1915(e)(2); *see also White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993).  The courts have long recognized that inmate complaints against state officials are a particularly fertile arena for frivolous and malicious litigation.  *Daye v. Bounds*, 509 F.2d 66, 68 (4th Cir. 1975) (cautioning the district courts to be particularly "diligent in acting to prevent state prisoners from calling upon the financial support of the federal government to prosecute frivolous civil suits intended to harass state prison officials").

Frivolous actions include claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless."  *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  This provision applies to cases dismissed at the summary judgment stage.  *See Blakely v. Wards*, 701 F.3d 995, 1001 (4th Cir. 2012).  The record reflects that Harris's factual contentions that Defendant Faulcon used excessive force "are clearly baseless."  *Id.* (quoting *Neitzke*, 490 U.S. at 327); *see Blakely*, 701 F.3d at 1000 n.2 ("Making an [Americans with Disabilities Act] claim without being disabled surely supports a frivolity determination and certainly supported the district court's decision that that dismissal counted as a strike.").  Thus, the action is factually frivolous.

11

This Court has previously stated:

> A litigant may be deemed to act maliciously if his actions "[i]mport a wish to vex, annoy, or injure another, or an intent to do a wrongful act, and may consist in direct intention to injure, or in reckless disregard of another's rights." BLACK'S LAW DICTIONARY, Special Fifth Ed. at 863 (1981). Therefore, "the court must assess the character of the allegations insofar as they indicate a motive on the part of the plaintiff to merely harass or vex the defendants rather than to seek redress for a legitimate legal claim." *Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D. Pa. 1975) (dismissing convicted rapist's conspiracy claim against his victim and prosecutors). After reviewing the sparse precedent and the legislative history of § 1915, Judge Larkins concluded:
>
>> when there is no recital of credible probative facts that support the allegations that the plaintiff is attempting to make, the Plaintiff sues those involved in securing his incarceration, and the tone of all the Plaintiff's allegations indicates that he is bringing his suit merely to satisfy his desire for vengeance against the Defendants and not to rectify any wrong done to him, then the suit is a MALICIOUS one.
>
> *Spencer* [*v. Rhodes*], 656 F. Supp. [458,] 463–64. Furthermore, in ascertaining whether a particular action is malicious, the Court's review is not limited to the current complaint but is guided by the plaintiff's past litigious conduct.

*Cain v. Com. of Va.*, 982 F. Supp. 1132, 1136 (E.D. Va. 1997) (citing *Cochran v. Morris*, 73 F.3d 1310, 1316–17 (4th Cir. 1996)).

Here, Harris seeks to sue one of his jailors, and there are no "credible probative facts that support the allegations that the plaintiff is attempting to make." *Id.* (citing *Spencer*, 656 F. Supp. at 463–64). Apparently, Harris was upset that Defendant Faulcon required him to return to his housing unit and did not accede to Harris's demand to wait for inmate Sutton. Given the video evidence, the record indicates that Harris is merely engaged in recreational litigation to further harass Defendant Faulcon, rather than to seek redress for legitimate claims. Accordingly, the Court also finds that the action is malicious.

## V. CONCLUSION

The Motion for Summary Judgment, (ECF No. 19), will be GRANTED.  Harris's Motion

for a *Franks* Hearing, (ECF No. 25), will be DENIED.  Harris's claim and the action will be

DISMISSED.  The action is frivolous and malicious.  The Clerk will be directed to note the

disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Order shall accompany this Memorandum Opinion.

Date: 7 November 2024
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge